United States District Court
Southern District of Texas

**ENTERED**

September 30, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


HECTOR PACHECO-MORALES,           §
TDCJ #2257486,                    §
                                  §
            Plaintiff,            §
                                  §
v.                                §        CIVIL ACTION NO. H-21-2256
                                  §
BRYAN COLLIER, et al.,            §
                                  §
            Defendants.           §


### MEMORANDUM OPINION AND ORDER


Plaintiff, Hector Pacheco-Morales (TDCJ #2257486), filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1) alleging that he was "sexually assaulted" by an officer who denied him access to medical care at the Estelle Unit and that his grievances about the incident were not adequately investigated. The court issued an Order for More Definite Statement (Docket Entry No. 15), and plaintiff filed more than one response (Docket Entry Nos. 16, 17, 18). At the court's request plaintiff also filed a Supplemental More Definite Statement (Docket Entry No. 57). After the court granted plaintiff's Motion for Leave to File Amended Complaint (Order, Docket Entry No. 83, p. 2), he filed an Affidavit (Docket Entry No. 85) and a Memorandum (Docket Entry No. 86) regarding his claim for monetary damages.

Plaintiff's Amended Complaint[1] is now before the court for screening under the Prison Litigation Reform Act (the "PLRA"), 28 U.S.C. § 1915A(b), which requires dismissal if the court determines that the Amended Complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted[,]" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); see also 28 U.S.C. § 1915(e)(2)(B) (setting out similar grounds for dismissal). After considering all of the pleadings and supplements submitted by plaintiff, the court will dismiss this action for the reasons explained below.

## I.  Background and Procedural History

Plaintiff has been incarcerated by the Texas Department of Criminal Justice ("TDCJ") since April 2, 2019.[2]  He has a previous conviction involving "child sexual abuse" from the State of Oregon, and he is currently serving a term of imprisonment for possession of child pornography and failure to register as a sex offender.[3] Although he is presently assigned to the LeBlanc Unit in Beaumont,

_____

[1]Because plaintiff included all of his allegations against the defendants in his request for leave to amend, the Motion for Leave to File an Amended Complaint (Docket Entry No. 77) was construed as the Amended Complaint and filed as Docket Entry No. 84.  See Order, Docket Entry No. 83, p. 2.  For purposes of identification all page numbers refer to the pagination imprinted by the court's Electronic Case Filing ("ECF") system.

[2]Plaintiff's More Definite Statement ("Plaintiff's MDS"), Docket Entry No. 16, p. 1.

[3]Id. at 9.

this action concerns an incident that occurred during a brief stay at the Estelle Unit in Huntsville, where plaintiff claims that he was sexually assaulted by an officer and denied prompt access to medical care.[4]

Plaintiff explains that he was transported to the Estelle Unit from the Ramsey Unit on November 6, 2019, for the purpose of undergoing medical treatment or testing related to sleep apnea.[5] Plaintiff discloses that he suffers from obesity and heart problems.[6]   Medical records reflect that plaintiff, who was 45 years of age in 2019, had heart surgery sometime before entering TDCJ to implant a "mechanical aortic valve" due to "infective endocarditis."[7] He also has a history of other chronic conditions, including hypertension, cirrhosis, and gastroesophageal reflux disease.[8]   In addition, he has been treated for angina or chest pain due to mild non-occlusive coronary artery disease as well as restrictive pulmonary disease.[9]

---

[4]Complaint, Docket Entry No. 1, p. 5.

[5]Id. at 4;   Plaintiff's MDS, Docket Entry No. 16, pp. 1-2; Plaintiff's Supplemental More Definite Statement ("Plaintiff's Supplemental MDS"), Docket Entry No. 57, p. 1 (clarifying the date he was transferred to the Estelle Unit and the incident that forms the basis for his Complaint as occurring in 2019, not 2020).

[6]Plaintiff's MDS, Docket Entry No. 16, pp. 1-2.

[7]UTMB Health TDCJ Clinic Pulmonary Progress Notes dated August 19, 2019, Exhibit E attached to Amicus Curiae Martinez Report ("Martinez Report"), Docket Entry No. 32-1, p. 228.

[8]Id.

[9]Id.; see also UTMB Health TDCJ Surgery (DC7A) Progress Notes, Exhibit E attached to Martinez Report, Docket Entry No. 32-1, p. 137.

-3-

After plaintiff reportedly complained of heat exhaustion and chest pain late in the evening of November 6, 2019, an officer who was reportedly named "Sergeant Ableak" arrived at his cell shortly after midnight.[10]   Plaintiff was escorted from his cell to the security desk on the first floor, where he was told that there were no medical providers on duty at that hour.[11]   Plaintiff claims that while he was returning him to his cell the officer named Sergeant Ableak sexually assaulted him by pressing up against him so that plaintiff could feel his penis against his hip.[12]   The officer, who did not believe that plaintiff needed medical care, then remarked: "You think you're so smart."[13]   The encounter ended when the elevator door opened and plaintiff was placed in his cell.[14]

Plaintiff returned to the Ramsey Unit on November 8, 2019, and complained verbally about being sexually assaulted at the Estelle Unit by an officer assigned to investigate violations of the Prison Rape Elimination Act ("PREA").[15]   After submitting a written report of the incident to the "PREA Ombudsman" in Huntsville, plaintiff met with a "PREA compliance auditor" at the Ramsey Unit on November 23, 2019.[16]   Plaintiff filed another complaint about his

---

[10]Complaint, Docket Entry No. 1, p. 5.

[11]Id.

[12]Id.

[13]Id.

[14]Id.

[15]Id.

[16]Id.

sexual assault allegations with the TDCJ Office of Inspector General ("OIG") on February 2, 2020, after he was transferred to the Ney Unit.[17] He claims that officers in charge of investigating his complaints failed to adequately investigate his claims and ultimately denied his grievances, concluding that no sexual assault occurred.[18]

On June 16, 2021, plaintiff filed his Complaint under 42 U.S.C. § 1983 against Senior Warden Jeffrey Richardson, Sergeant Ableak, Major Caleb Brumley, PREA Officer Ashley Cooksey, and Governor Greg Abbott, alleging that he had been sexually assaulted and that his grievances were not adequately investigated.[19] Alleging further that he suffers from "PTSD" as a result of the incident, plaintiff sought injunctive relief in the form of mental health treatment and "restitution" or compensatory damages for his "mental anguish."[20]

To supplement the pleadings the State Attorney General's Office provided an administrative report under <u>Martinez v. Aaron,</u> 570 F.2d 317 (10th Cir. 1987), which includes a voluminous amount of grievances and medical records,[21] and plaintiff filed a

---

[17]<u>Id.</u>

[18]<u>Id.</u> at 5-6.

[19]<u>Id.</u> at 3.

[20]<u>Id.</u> at 4.

[21]<u>See</u> Amicus Curiae <u>Martinez</u> Report, Docket Entry Nos. 28-32.

response.[22]   After reviewing these submissions the court requested
an   answer   regarding   the   claims   against   Sergeant   Ableak.[23]
Thereafter, the Attorney General's Office advised the court that a
diligent search of personnel records failed to identify an officer
of that name.[24]   At the court's request plaintiff provided a
Supplemental More Definite Statement with additional information
about the officer who reportedly assaulted him.[25]   The Attorney
General's Office also provided duty rosters for the Estelle Unit on
the night that the sexual assault reportedly occurred.[26]

After giving plaintiff an opportunity to review the duty
rosters and related records provided by the State Attorney
General's Office, the court granted his Motion for Leave to File an
Amended Complaint.[27]   In his Amended Complaint plaintiff identifies
"Sergeant Enuneku" as the officer who sexually assaulted him and
engaged in "wanton abuse" while denying him access to medical care
during the early morning hours of November 7, 2019.[28]   In addition,

---

[22]Martinez Report Response, Docket Entry No. 39.

[23]Order and Request for Answer, Docket Entry No. 40.

[24]The Office of the Attorney General's Advisory Regarding
"Sergeant Ableak," Docket Entry No. 43, p. 1.

[25]Plaintiff's Supplemental MDS, Docket Entry No. 57, pp. 1-5.

[26]Amicus Advisory to the Court, Docket Entry No. 66; Amicus
Advisory to the Court, Docket Entry No. 71.

[27]Order, Docket Entry No. 83, p. 2.

[28]Amended Complaint, Docket Entry No. 84, pp. 2, 5.

plaintiff sues the following other defendants for failing to protect him from harm or to investigate his grievances about the sexual assault: (1) Executive Director Bryan Collier; (2) former Estelle Unit Warden Daniel Dickerson; (3) Officer Jemmerson, who is described as the Safe Prisons/PREA Manager at the Jester III Unit; (4) Investigator Cesar Sanchez of the OIG at the Ramsey Unit; (5) Investigator Calvin Davis of the OIG at the Estelle Unit; (6) Investigator Mark Serras of the OIG at the Ney Unit; (7) Officer Hatton of the Estelle High Security Unit; (8) Governor Greg Abbott; and (9) Health Care Administrator Khari Mott of the Estelle Unit.[29]  Plaintiff seeks declaratory and injunctive relief, as well as compensatory, nominal, and punitive damages.[30]

## II.   Standard of Review

Federal district courts are required by the Prison Litigation Reform Act to screen prisoner complaints to identify cognizable claims or dismiss the complaint if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. See Crawford-El v. Britton, 118 S. Ct. 1584, 1596 (1998) (summarizing provisions found in the PLRA, including the requirement that district courts screen prisoners' complaints and summarily dismiss frivolous, malicious, or meritless actions); see also Coleman v. Tollefson, 135 S. Ct. 1759, 1761-62 (2015) (discussing the

---

[29]Id. at 2-4.

[30]Id. at 8.

screening provision found in the federal in forma pauperis statute, 28 U.S.C. § 1915(e)(2), and reforms enacted by the PLRA that were "'designed to filter out the bad claims [filed by prisoners] and facilitate consideration of the good'") (quoting Jones v. Bock, 127 S. Ct. 910, 914 (2007)) (alteration in original).

A complaint is frivolous if it "'lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 112 S. Ct. 1728, 1733 (1992) (quoting Neitzke v. Williams, 109 S. Ct. 1827, 1831 (1989)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998) (citation and internal quotation marks omitted). "A complaint lacks an arguable basis in fact if, after providing plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998) (citing Denton, 112 S. Ct. at 1733-34).

To avoid dismissal for failure to state a claim, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citation omitted). If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Id. at 1974. A reviewing court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the

plaintiff." Heinze v. Tesco Corporation, 971 F.3d 475, 479 (5th Cir. 2020) (internal quotation marks and citation omitted). But it need not accept as true any "conclusory allegations, unwarranted factual inferences, or legal conclusions." Id. (internal quotation marks and citation omitted); see also White v. U.S. Corrections, L.L.C., 996 F.3d 302, 307 (5th Cir. 2021) (same). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).

Plaintiff represents himself in this case. Courts are required to give a pro se litigant's contentions a liberal construction. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam). Even under this lenient standard, a pro se litigant's "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." Coleman v. Lincoln Parish Detention Center, 858 F.3d 307, 309 (5th Cir. 2017) (internal quotation marks and citation omitted). Where a plaintiff has supplemented his pleadings and had an opportunity to file an amended complaint, summary dismissal is permissible if he has pled his best case. See Brown v. Taylor, 829 F.3d 365, 370 (5th Cir. 2016).

### III.  Discussion

#### A.  Eleventh Amendment Immunity

Plaintiff seeks monetary damages against the defendants for actions taken in their official capacity as state employees.

Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. See Will v. Michigan Dep't of State Police, 109 S. Ct. 2304, 2309 (1989). The Eleventh Amendment also bars a federal action for monetary damages against state officials when the state itself is the real party in interest. See Pennhurst State School & Hospital v. Halderman, 104 S. Ct. 900, 908-09 (1984). A suit against a state official in his or her official capacity is considered a suit against the state itself. See Will, 109 S. Ct. at 2312 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted).

Texas has not waived its Eleventh Amendment immunity and Congress did not abrogate that immunity when it enacted 42 U.S.C. § 1983. See NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015) (citing Quern v. Jordan, 99 S. Ct. 1139, 1145 (1979)). As a result, the individual defendants employed by TDCJ are entitled to immunity from any claim for monetary damages against them in their official capacity.[31] See Loya v. Texas

---

[31]There is a narrow exception that applies to claims for prospective injunctive relief. See Ex parte Young, 28 S. Ct. 441 (1908). Because plaintiff is no longer confined at the Estelle Unit, his transfer to a different facility renders moot any claim seeking injunctive relief in the form of medical treatment for the issues arising at the Estelle Unit. See Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

Department of Corrections, 878 F.2d 860, 861 (5th Cir. 1989) (per curiam) ("[TDCJ's] entitlement to immunity under the [E]leventh [A]mendment is clearly established in this circuit."); Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.").   Therefore, plaintiff's claims for monetary damages against the defendants in their official capacity must be dismissed.

## B.   Claims Against Sergeant Enuneku

### 1.   Unwanted Touching

Plaintiff's primary claim is that the officer identified as Sergeant Enuneku sexually assaulted him or used force improperly by pressing up against plaintiff in an elevator during the early morning hours of November 7, 2019.[32]  This claim is governed by the Eighth Amendment, which prohibits cruel and unusual punishment in the form of "unnecessary and wanton inflictions of pain" without any penological purpose.  Rhodes v. Chapman, 101 S. Ct. 2392, 2399 (1981) (internal quotation marks omitted).  To establish an Eighth Amendment violation a plaintiff must satisfy two requirements. See, e.g., Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999). First, the alleged "punishment" must be "objectively, sufficiently serious."   Farmer v. Brennan, 114 S. Ct. 1970, 1977 (1994)

---

[32]Complaint, Docket Entry No. 1, p. 5; Amended Complaint, Docket Entry No. 84, p. 5.

(internal quotation marks omitted). Second, the prison official involved must have a "sufficiently culpable state of mind." Id.

Plaintiff does not meet the first requirement by satisfying the objective prong of the Eighth Amendment analysis. Conditions that result in an objectively "serious deprivation of basic human needs" are prohibited by the Eighth Amendment, but "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Rhodes, 101 S. Ct. at 2399. In the context of a claim involving force it is well established that not every unwanted malevolent touch by a prison guard gives rise to a federal cause of action. See Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'")). The Constitution excludes from recognition de minimis uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" Hudson, 112 S. Ct. at 1000 (quotation marks and citation omitted).

Courts have concluded that a prison official's sexual abuse of an inmate may reach constitutional dimensions and give rise to a claim under 42 U.S.C. § 1983 if the allegations are sufficiently serious. See, e.g., Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) (affirming the dismissal of an inmate's allegations that he was "verbally harassed, touched, and pressed against without his

-12-

consent" as not "objectively, sufficiently serious" to state an Eighth Amendment violation). Although a single, brief encounter that causes no physical injury or pain is unlikely to implicate the Eighth Amendment, "a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015) (clarifying that the holding in Boddie should be interpreted narrowly and that "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment").

The incident that forms the basis for plaintiff's claim concerns a brief, isolated incident in which an officer pressed up against plaintiff in a manner that plaintiff found offensive, but which did not cause any physical injury. The Fifth Circuit has held in a series of unpublished opinions that "[w]hile violent sexual assaults involving more than de minimis force are actionable under the Eighth Amendment, . . . isolated, unwanted touchings by prison employees, though 'despicable and, if true, they may potentially be the basis of state tort actions . . . they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.'" Copeland v. Nunan, 250 F.3d 743, 2001 WL 274738, at *3 (5th Cir. 2001) (per curiam) (quoting Boddie, 105

-13-

F.3d at 860-61); see also Allen v. Johnson, 66 F. App'x 525, 2003 WL 21017401, at *1 (5th Cir. 2003) (per curiam) (affirming the district court's dismissal of a case as frivolous where a prisoner alleged that the guard touched him in a sexual manner during routine pat-down searches); Pryer v. Walker, 385 F. App'x 417, 418, 2010 WL 2836160, at *1 (5th Cir. 2010) (per curiam) (concluding that a prisoner's claim of sexual abuse against a female prison guard, who rubbed his chest and made comments about his hair and chest during an electrocardiogram, was properly dismissed as frivolous).

Several district courts within the Fifth Circuit have also concluded that incidents similar to the one described by plaintiff in this case, which involved a single, brief encounter that did not produce physical injury, do not violate the Eighth Amendment.  See Felan v. Fernandez, Civil Action No. SA-17-CV-880-XR, 2019 WL 3781443, at *4 (W.D. Tex. Aug. 12, 2019) (dismissing a prisoner's claim that an officer grabbed his buttocks as "isolated, unwanted touching" rather than "repugnant contact of a sexual nature that offends modern standards of decency"); Ben v. Brinks, No. EP-13-CV-00023-KC-ATB, 2014 WL 931796, at *2 (W.D. Tex. Feb. 13, 2014), rec. adopted, 2014 WL 931432 (W.D. Tex. Mar. 10, 2014) (dismissing for failure to state a claim the plaintiff's allegation that he was awakened one night by a guard rubbing and touching his inner thighs and buttocks); Brown v. Sloan, Civil Docket No. 1:09-cv-01066, 2010 WL 476720, at *2 (W.D. La. Feb. 10,

-14-

2010) (holding that a single incident of physical touching or fondling during a shakedown was not "the kind of 'severe and repetitive' abuse or wanton and sadistic infliction of pain that rises to the level of an Eighth Amendment violation"); Wright v. Thompson, Civil Action No. 3:09-CV-1544, 2010 WL 3282955, at *4-5 (W.D. La. June 30, 2010), rec. adopted, 2010 WL 3282957, at *4-5 (W.D. La. Aug. 17, 2010) (dismissing claims of sexual abuse by an officer who allegedly touched the plaintiff's penis on one occasion as a "single, brief physical contact" which, even when coupled with verbal harassment, was "not sufficiently serious and pervasive to permit redress under the Eighth Amendment").

Although plaintiff has characterized the incident that occurred at the Estelle Unit as a sexual assault, his allegations are more accurately characterized as a brief, isolated instance of unwanted touching that did not result in any physical injury.[33] Assuming that his allegations are true, plaintiff's claim does not rise to the level of a constitutional violation of the Eighth Amendment and is not actionable under 42 U.S.C. § 1983. Accordingly, this claim will be dismissed.

---

[33]The PLRA precludes an action by a prisoner for compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  42 U.S.C. § 1997e(e).  Plaintiff does not allege that he suffered a physical injury.  Nor does he describe a sexual act as that term is defined in 18 U.S.C. § 2246(2).  As a result, the PLRA precludes his claim for compensatory damages based on mental or emotional distress. See Alexander v. Tippah County, Mississippi, 351 F.3d 626, 631 (5th Cir. 2003) (per curiam).

2.   <u>Delay in Access to Medical Care</u>

Plaintiff appears to contend that Sergeant Enuneku also denied him access to prompt medical care by disregarding his claims of heat exhaustion and chest pain.[34]  A prison official's "deliberate indifference to serious medical needs of prisoners" can constitute "unnecessary and wanton infliction of pain" of the type proscribed by the Eighth Amendment and actionable under 42 U.S.C. § 1983.  <u>Estelle v. Gamble</u>, 97 S. Ct. 285, 291 (1976).  Records provided by the Attorney General's Office, which are summarized below, reflect that plaintiff was not denied medical care at the Estelle Unit, but that care was delayed for approximately 12 hours.

Records show that plaintiff was seen shortly after his arrival at the Estelle Unit at 21:58 (shortly before 10:00 p.m.) on the night of November 6, 2019, following his transfer from the Ramsey Unit.[35]  During the intake process plaintiff told the nurse who was reviewing his chart that he did not take insulin or require any dressing changes and that he did not have "any current medical needs" at that time.[36]  A short while later at 22:30 (10:30 p.m.), plaintiff claims that he advised a nurse that he was having chest

_____

[34]Amended Complaint, Docket Entry No. 84, p. 5.

[35]Correctional Managed Health Care ("CMHC") Transfer Screening Form (Nurse's Chain Review), HSN-1, Part II Enroute Chart Review, Exhibit D attached to <u>Martinez</u> Report, Docket Entry No. 31-11, p. 127.

[36]<u>Id.</u>

pain, but he was ignored.[37]   At some point plaintiff asked a
"housing officer" if he could see a supervisor.[38]   At 00:30
(12:30 a.m.) Sergeant Enuneku arrived at plaintiff's cell and
escorted him to the security desk on the first floor.[39]   According
to plaintiff, he was told that there were no medical providers on
duty at that hour of the night and that he would have to wait until
morning.[40]   Sergeant Enuneku then returned plaintiff to his cell.[41]

Records show that plaintiff was treated in the Estelle Unit
infirmary the next morning, November 7, 2019, at 11:25 a.m.[42]   A
provider instructed the nurse on duty to check plaintiff's
"Troponin" and return him to his cell if the test results were
below a certain level (0.03).[43]   The test showed that his Troponin
level was 0.01.[44]   Plaintiff was treated with aspirin and

---

[37]Martinez Report Response, Docket Entry No. 39, p. 6;
Plaintiff's Supplemental MDS, Docket Entry No. 57, p. 1. Plaintiff
filed a separate lawsuit against a nurse at the Estelle Unit,
alleging denial of medical care on November 6-7, 2019.   See
Pacheco-Morales v. Linthicum, et al., H-22-cv-2189 (S.D. Tex.).
Accordingly, his claims against the nurse or any other medical
provider who reportedly ignored his request for care on the night
in question will not be addressed further.

[38]Martinez Report Response, Docket Entry No. 39, p. 6.

[39]Plaintiff's Supplemental MDS, Docket Entry No. 57, pp. 1-2.

[40]Complaint, Docket Entry No. 1, p. 5.

[41]Id.

[42]CHMC Urgent/Emergent Health Care Record, Exhibit D attached
to Martinez Report, Docket Entry No. 31-4, p. 24.

[43]Id.

[44]Id.

nitroglycerin for elevated blood pressure (156/128).[45] After an EKG plaintiff's blood pressure decreased to 136/96, and he was released in stable condition to return to his cell at 12:25 p.m. on November 7, 2019.[46]

The Fifth Circuit has emphasized that allegations of delay in medical care only violate the Constitution "if there has been deliberate indifference that results in substantial harm." Rogers v. Boatright, 709 F.3d 403, 410 (5th Cir. 2013) (emphasis in original) (quoting Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006)); see also Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993). The medical records of the treatment he received show that plaintiff spent no more than an hour in the infirmary on the morning of November 7, 2019, before being returned to his cell.[47] In responding to plaintiff's grievance about the delay in care, health care administrators observed that his Troponin level and EKG were both "normal" when he was seen in the Estelle Unit infirmary on that occasion.[48]   Records show that plaintiff was further evaluated a week later by medical providers who were monitoring his chronic health conditions on November 15, 2019, following his

---

[45]Id.

[46]Id.

[47]Id.

[48]See Step 2 Grievance #2020035283, Exhibit Part 6 attached to Martinez Report, Docket Entry No. 28-6, p. 181.

return to the Ramsey Unit, and no problems associated with his stay at the Estelle Unit were noted.[49]

To the extent that plaintiff alleges Sergeant Enuneku delayed his access to care during the early morning hours of November 7, 2019, he does not allege facts showing that he suffered any harm as a direct result of the delay attributed to this defendant.[50]  Under these circumstances, plaintiff's allegation against Sergeant Enuneku for denying access to prompt medical care does not state a claim and will be dismissed under 28 U.S.C. § 1915A(b).

## C.  Claims Against Officer Hatton

Plaintiff appears to claim that Officer Hatton "encouraged" Sergeant Enuneku's "wanton abuse" and failed to conduct a "welfare check" during his shift on November 7, 2019.[51]  Plaintiff does not allege facts showing what, if anything, Officer Hatton did to encourage Sergeant Enuneku's actions.  Because plaintiff has failed to demonstrate a constitutional violation in connection with his

---

[49]CMHC Provider Chronic Clinic Note, Individualized Treatment Plan, Exhibit D attached to Martinez Report, Docket Entry No. 31-1, pp. 260-64.

[50]When asked to explain with specificity how he was harmed by the delay plaintiff alleged that he suffered problems with his gallbladder, bowels, and colon, which required medical treatment in March, April, and May of 2020, but he alleged no facts showing that these conditions have any connection to delay in receiving medical care caused by Sergeant Enuneku at the Estelle Unit on the night of November 6, or the early morning hours of November 7, 2019. Plaintiff's MDS, Docket Entry No. 16, p. 6; Plaintiff's [Second] More Definite Statement, Docket Entry No. 18, p. 3.

[51]Amended Complaint, Docket Entry No. 84, p. 5.

encounter with Sergeant Enuneku, he cannot show that Officer Hatton is liable as a bystander. See Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013) (describing the theory of bystander liability and the required elements, which include showing that the officer knew that a fellow officer was violating an individual's constitutional rights).

Likewise, for reasons discussed above, plaintiff has also failed to demonstrate that he suffered substantial harm from the denial of medical care attributed to Sergeant Enuneku. Plaintiff does not otherwise allege facts showing that a welfare check was necessary or that he suffered any harm as the result of Officer Hatton's failure to conduct one during his shift. His conclusory allegations are insufficient to state a claim for the violation of civil rights. See Kinash v. Callahan, 129 F.3d 736, 738 (5th Cir. 1997) ("Merely alleging a constitutional violation or making a conclusory allegation is not enough; the claimant must have a colorable constitutional claim."); Wesson v. Oglesby, 910 F.2d 278, 281 (5th Cir. 1990) ("An IFP complaint that recites bare legal conclusions, with no suggestion of supporting facts, . . . is a prime candidate for dismissal under [§ 1915(e)(2)(B)]."). Therefore, the claim against Officer Hatton will be dismissed.

## D.    Claims Against Grievance Investigators

Plaintiff claims that the grievances he filed about being sexually assaulted at the Estelle Unit were not adequately

-20-

investigated by Safe Prisons/PREA Manager Jemmerson, OIG Investigator Cesar Sanchez, OIG Investigator Calvin Davis, and OIG Investigator Mark Serras.[52] Plaintiff alleges that these defendants violated his rights by concluding that he was not sexually assaulted at the Estelle Unit and by denying his complaints in retaliation for using the grievance process.[53]

The Fifth Circuit has held that a prisoner's claim that his grievances were improperly investigated and denied is properly dismissed because "a prisoner 'does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction.'" Schwarzer v. Wainwright, 810 F. App'x 358, 360 (5th Cir. 2020) (quoting Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005)). Likewise, a state prisoner cannot demonstrate that he has a constitutional right to a grievance system. See Schwarzer, 810 F. App'x at 360; see also Morris v. Cross, 476 F. App'x 783, 785 (5th Cir. 2012) (per curiam) (finding inmate's claim that he was denied adequate investigation into his grievance was properly dismissed as frivolous under 28 U.S.C. § 1915A(b)(i)). Therefore, plaintiff's allegation that the defendants failed to adequately investigate his grievances will be dismissed as frivolous.

To the extent plaintiff alleges that the defendants failed to investigate his claim of sexual assault in retaliation for his use

---

[52]Amended Complaint, Docket Entry No. 84, pp. 5-6.

[53]Plaintiff's Supplemental MDS, Docket Entry No. 57, pp. 6-9; Amended Complaint, Docket Entry No. 84, pp. 5-6.

of the grievance process, this claim must be regarded with skepticism. See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). "'To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" DeMarco v. Davis, 914 F.3d 383, 388 (5th Cir. 2019) (citations omitted). Conclusory allegations are insufficient to make this showing or to state a claim. See id.

Plaintiff does not allege facts establishing a retaliatory motive or a chronology from which retaliation may be plausibly inferred where the investigation of his grievances are concerned. See Woods, 60 F.3d at 1166. More importantly, plaintiff fails to establish that he had a protected right to file grievances that were deemed by the defendants to be without merit. In that regard, his allegations do not establish that the incident at the Estelle Unit was a sexual assault, and he does not otherwise show that the grievances he filed regarding the incident were legitimate. See Johnson v. Rodriguez, 110 F.3d 299, 310-11 (5th Cir. 1997) (holding that a prisoner is entitled only to a reasonably adequate opportunity to file non-frivolous claims); Jackson v. Cain, 864 F.2d 1235, 1249 (5th Cir. 1989) (indicating that the use of a grievance procedure would not be justified if a complaint to prison officials is "not in good faith"); see also Lee v. Richland Parish

-22-

Detention Center, 483 F. App'x 904, 906 (5th Cir. 2012) (per curiam) (frivolous grievances and civil actions cannot form the basis of a retaliation claim).   Therefore, plaintiff's claims against Jemmerson, Sanchez, Davis, and Serras will be dismissed as both frivolous and for failure to state a claim.

## E.   Supervisory Officials

The remaining defendants, including Executive Director Bryan Collier, former Estelle Unit Warden Daniel Dickerson, Governor Abbott, and Health Care Administrator Khari Mott, are supervisory officials.[54]   Plaintiff does not allege facts showing that these officials had any personal involvement in the events giving rise to his claims.   See Ashcroft, 129 S. Ct. at 1949 (Supervisory officials are not liable for wrongdoing by subordinates because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").   Nor does he allege facts showing that any of these defendants implemented a policy that resulted in a constitutional deprivation.   Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 421 (5th Cir. 2017).   As a result, the claims against Collier, Dickerson, Abbott, and Mott will be dismissed for failure to state a claim upon which relief may be granted.

## F.   Plaintiff's Motions

Plaintiff has filed a Motion to Certify Evidence to Exhibits, which presents records that are unrelated to his underlying

--------

[54]Amended Complaint, Docket Entry No. 84, pp. 2-4.

claims.[55]  Because the proposed records do not concern the claims
or the defendants in this case, this motion will be denied.

Plaintiff has also filed what is construed as a Motion for
Leave to File [Second] Amended Complaint, which repeats many of the
same allegations made in his Amended Complaint while referencing
several of his other lawsuits.[56]  The court has already given
plaintiff several opportunities to supplement his pleadings with
additional information about his claims and the defendants.[57]  The
court also requested a Martinez Report to further supplement the
pleadings.[58]  The court has reviewed plaintiff's Amended Complaint
along with all of his previous submissions and concluded that he
has not established a meritorious claim.  Although Rule 15(a) of
the Federal Rules of Civil Procedure states that leave to amend
should be freely given, a district court need not grant a futile
motion to amend.  See Stripling v. Jordan Production Co., LLC, 234
F.3d 863, 872-73 (5th Cir. 2000); Martin's Herend Imports, Inc. v.
Diamond & Gem Trading United States of America Co., 195 F.3d 765,
771 (5th Cir. 1999) (Leave to amend may be denied if the proposed

---

[55]Motion to Certify Evidence to Exhibits, Docket Entry No. 79.

[56]Motion for Leave to File [Second] Amended Complaint, Docket
Entry No. 80.

[57]See Plaintiff's MDS, Docket Entry No. 16; Additional
Plaintiff Definite Statement, Docket Entry No. 17; Plaintiff's
[Second] More Definite Statement, Docket Entry No. 18; and
Plaintiff's Supplemental MDS, Docket Entry No. 57.

[58]See Martinez Report, Docket Entry Nos. 28-32; see also
Martinez Report Response, Docket Entry No. 39.

amendment is "frivolous or futile."). Because the Motion for Leave to File [Second] Amended Complaint repeats claims that have been rejected for reasons discussed previously, the court will deny further leave to amend and will dismiss this case.

### IV.   Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.   Plaintiff's Motion to Certify Evidence to Exhibits (Docket Entry No. 79) and Motion for Leave to File [Second] Amended Complaint (Docket Entry No. 80) are **DENIED**.

2.   Because the civil rights action filed by Hector Pacheco-Morales is frivolous and fails to state a claim upon which relief may be granted, it will be dismissed with prejudice.

3.   The dismissal will count as a "strike" for purposes of 28 U.S.C. § 1915(g).

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, this 30th day of September, 2022.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE